UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL LOPORTO,                                      **COMPLAINT**

                         Plaintiff,       Civil Case No.   1:15-cv-866 (LEK/CFH)

- against -

COUNTY OF RENSSELAER, YOUEL C. SMITH, III,
also known as and practicing law under the assumed
name of "Trey Smith", individually and in his capacity as
appointed Special District Attorney for the County of Rensselaer;
RICHARD J. McNALLY, JR., individually and in his capacity as
District Attorney for the County of Rensselaer;
WILLIAM A. McINERNEY; JOHN F. BROWN;
DANIEL B. BROWN; and JOHN J. OGDEN, individually
and as investigator for the New York State Police,

                         Defendants.
_____

### INTRODUCTION AND JURISDICTIONAL STATEMENT

1.     This is a civil action for damages, pursuant to Title 42, U.S.C. §§1983, 1984,

1985 and 1986, and the Federal Constitution, to redress violations of Plaintiff's civil and

constitutional rights under federal statutes and the Fourth and Fifth Amendments to the United

States Constitution.  Plaintiff challenges the Defendants' investigation and administration of a

voter fraud case that spans many years, for at least the elections of 2007 through 2009, which

eventually lead to a false arrest, false charge, false indictment and trial of the Plaintiff in a variety

of ways; to wit:  in effecting a fraudulent, conspiratorial and false investigation and

administration of the Plaintiff relative to this voter fraud case, leading to use of the information

gathered during that false and fraudulent investigation and administration in subsequent charges,

failing to interview key witnesses and Defendants through the investigation and administration of this voter fraud case and false arrest, indictment and trials of the Plaintiff which were unconstitutional and illegal, without any basis for any criminal charges.  In addition, these actions and omissions of the Defendants were conducted through their false, fraudulent and illegal investigative and administrative actions prior to an independent prosecution of the Plaintiff, but leading to that prosecution, in fabricating evidence, coercing false evidence, ignoring inculpatory evidence of Defendants and others, and engaging in a conspiracy to investigate, concoct evidence against, conspire against and scapegoat prosecute the Plaintiff to shield others from prosecution who were the actual guilty and liable parties in this matter, all causing compensatory damages to the Plaintiff for which the Plaintiff is entitled to compensatory damage and punitive damage relief, as set forth herein.

2.      Plaintiff is asserting claims against the Defendants for intentionally and negligently conducting a patently false, coerced and fraudulent investigation and administration of a voter fraud case leading to prosecution of the Plaintiff through false charges, false arrest, indictment and trials without any factual basis for the investigation, administration and subsequent prosecution.  These actions and omissions against the Plaintiff include Defendant Smith's actions and omissions in refusing to interview key factual witnesses, including Kevin McGrath, Anthony DeFiglio, Anthony Renna, Robert Martiniano, and Defendants, and thus, setting into motion the unconstitutional and illegal acts and deprivation and violation of civil rights that caused Plaintiff's injuries.  Defendants' failed to adequately or at all investigate facts, sufficiently or at all conduct an investigation and administration, reach the truth, prosecute the guilty parties, and preserve, prevent and avoid the deprivation of civil and constitutional rights of

2

the Plaintiff.  Plaintiff is also asserting claims against the Defendants for setting into motion these unconstitutional and illegal acts and deprivation and violation of civil and constitutional rights through the aforementioned illegal, fraudulent and false investigation and administration leading to prosecution of the Plaintiff, for a variety of false and fraudulent purposes including the deliberate and intentional fabrication of evidence, and suppression and refusal to uncover and use and conspiracy to fabricate false and coerced facts during the investigation and administration and through the prosecution in order to protect the guilty parties for the personal and political reasons of the Defendants, and to scapegoat prosecute the Plaintiff and to protect the Defendants and other guilty parties from prosecution of the same crimes.

3.      Defendants, their agents and employees have, under color of state law, subjected Plaintiff to an illegal interference with Plaintiff's constitutional rights.

4.      Defendants waived and relinquished the requirement that a Notice of Claim be filed by the Plaintiff.

5.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question jurisdiction).

6.      Venue is properly laid in the Northern District of New York, under the provisions of 28 U.S.C. §1391, in that all, or a substantial part, of the events or omissions giving rise to the claims alleged herein occurred within this District and all of the parties reside, or are located, in this District.

7.      Plaintiff demands a jury trial of this action.

**PARTIES**

8.      At all times relevant to the complaint, Plaintiff was a resident of the City of Troy,

County of Rensselaer and State of New York, and a citizen of the United States.

9.      At all times relevant to the complaint, Defendant, the COUNTY OF RENSSELAER (hereinafter "County"), was a municipality located in Rensselaer County, State of New York, and within the jurisdiction of the United States Federal District Court for the Northern District of New York, and as such, had direct and vicarious liability for the within described activities, including actions and omissions of all of the other Defendants.

10.      At all times relevant to the complaint, Defendant, YOUEL C. SMITH, III, (hereinafter "Smith"), was appointed Special District Attorney for the County of Rensselaer by Rensselaer County Court Judge Robert Jacon.  He is named as a Defendant in this action as his personal capacity and in his capacity as an agent, servant, and/or employee of the Defendant, County of Rensselaer.

11.      At all times relevant to the complaint, Defendant, RICHARD J. McNALLY, JR., (hereinafter "McNally"), was the District Attorney for the County of Rensselaer.  He is named as a Defendant in this action as his personal capacity and in his capacity as an agent, servant, and/or employee of the Defendant, County of Rensselaer.

12.      At all times relevant to the complaint, upon information and belief, Defendant, WILLIAM A. McINERNEY, (hereinafter "McInerney") was a resident of the County of Rensselaer and State of New York.

13.      At all times relevant to the complaint, upon information and belief, Defendant, JOHN F. BROWN, (hereinafter "J. Brown"), was a resident of the County of Rensselaer and State of New York.

14.      At all times relevant to the complaint, upon information and belief, Defendant,

DANIEL B. BROWN, (hereinafter "D. Brown"), was a resident of the County of Rensselaer and State of New York.

15.     At all times relevant to the complaint, upon information and belief, Defendant, JOHN J. OGDEN, (hereinafter "Ogden") was a resident of the County of Rensselaer and State of New York, and an investigator for the New York State Police.

## FACTUAL ALLEGATIONS

16.     At all times relevant hereto, Plaintiff, along with many others including the Defendants McInerney, J. Brown and D. Brown, was engaged in the political process by assisting the Working Class Party of the City of Troy by passing petitions and absentee voting applications relevant to the election of 2009.

17.     Subsequent to the above described activities, an outside third-party, one Robert Mirch, suspected that forgeries on absentee ballots and absentee ballot applications occurred throughout August and September, 2009, and made claims and accusations to that effect to the authorities, including the Defendants, the County and New York State Police.

18.     Subsequent to the above described activities, the New York State Police conducted an investigation which lead to evidence against a variety of parties, including Defendants, McInerney, J. Brown and D. Brown.  The results of that investigation were turned over to the Defendant, County.

19.     During the course of the suspicions, allegations and activities described above, and once word of the investigations into these improprieties and forgeries and claims of false, forgeries, and forged activities was made public, Defendant McInerney, upon information and belief, communicated with other political party operatives in the Democratic Party of the

5

Defendant, County, including Defendant McNally, as sitting District Attorney for the Defendant, County, and Defendants, J. Brown and D. Brown, and let it be known that if he were involved in the prosecution, he was going to "take everyone down with him."

20.     Upon information and belief, Defendant McNally, faced with mounting evidence accumulated by the New York State Police and other investigatory agencies of this false, fraudulent and forgery behavior relative to the primary elections of 2007, 2008 and 2009 and prior to and at the beginning of the investigation and administration of the so-called voter fraud case of 2009, determined that he wanted to recuse himself, for no apparent or least stated, reason. He made application for recusal to the Supreme Court of the County of Rensselaer, which was granted, despite the fact that he made no motion or other written application to do so as required by statute or law, and despite the fact that there was, upon information and belief, no known or express reason for such recusal, except that Defendant McNally seemingly, upon information and belief, knew or had reason to know of similar false, fraudulent and forgery activities during the course of the elections of 2007, 2008 and 2009 in the City of Troy.  Upon information and belief, Defendant McNally had reason to suspect that guilty parties involved in the prior elections of 2007 and 2008 and the current election of 2009 were Democratic operatives who had assisted him in his prior elections and had a very good chance of being implicated by a conspiracy of the false, fraudulent and forgery activities during elections in the City of Troy which he either knew of or should have known of in the course of his own candidacy for District Attorney in 2007.  In essence, upon information and belief, McNally knew, or should have known, and profited, from the false, fraudulent and forgery activities of other Democratic operatives, including Defendants McInerney, J. Brown and D. Brown, in these prior (2007 and 2008) and current (2009) election

6

years.  In any event, this recusal was clearly illegal and, as a matter of law, all activities of

commission and omission after this illegal recusal including investigation and administration and

subsequent prosecution of this matter were rendered moot, void and illegal.  Therefore, as a

matter of law and fact, all activities including all actions of commission and omission by

Defendant Smith in the course of the investigation, administration and prosecution of this voter

fraud case against the Plaintiff was beyond the scope of his authority, especially in regard to his

involvement in an investigatory capacity in conspiracy with Democratic operatives, including the

Defendants, in the fabrication of evidence against the Plaintiff and refusal to procure evidence

against other guilty parties, including the Defendants.  These facts render all Defendants liable

for these activities of action and omission, and beyond the protection of any immunity.

21.     As a result of the facts set forth above, at the very beginning of the investigation

and administration of this so-called voter fraud case, Defendant McNally went further in his

recusal application by taking steps to have Defendant Smith, his former colleague in the District

Attorney's Office, appointed Special Prosecutor.  Upon information and belief, this was done

because he knew Defendant Smith would work with him in making sure that Defendant

McInerney and other operatives who assisted him in these type of false, fraudulent and forgery

activities in previous elections were not implicated or involved.  Thus, a conspiracy arose at the

very beginning of the investigation and administration to cover up false, fraudulent and forgery

behavior relative to the elections of 2007, 2008 and 2009 in the City of Troy.

22.     Throughout these activities of commission and omission, Defendants Smith and

McNally acted in the scope of his employment as an employee of, and District Attorney of the

Defendant County who, as a matter of law, was directly and vicariously liable for his actions of

commission and omission.

23.     What occurred next was the *actus reus* conspiracy during the course of the investigation and administration of the voter fraud case and prior to any prosecution, but leading to use of this false, fraudulent and coerced evidence obtained during the investigation and administration.  This occurred in this subsequent prosecution, in that this false, fraudulent and coerced evidence obtained thereby was utilized against Plaintiff, despite the fact that there was little, if any, evidence of his involvement in any such activities.  The conspiracy consisted of the fact that this false, fraudulent and coerced evidence, uncovered through the investigation and administration of this voter fraud case was done to hide and cover up the clearly guilty activities of the false, fraudulent and forged voter fraud participation of Democratic operatives, including Defendants, McInerney, J. Brown and D. Brown, in the course of the 2007, 2008 and 2009 elections, at the same time that a great deal of inculpatory evidence of guilt of this voter fraud and forgery action against the other Defendants, and others, was deliberately ignored, suppressed and not used.  Defendant Smith clearly knew about it and participated in this investigation but proceeded with the investigation and administration of this voter fraud case, and eventual use of the evidence procured thereby in the subsequent prosecution.

24.     Subsequently, upon information and belief, Defendant Smith utilized the false, fraudulent and coerced evidence obtained during his investigation and administration of this voter fraud case to present a case against the Plaintiff to the Grand Jury and obtained an indictment against the Plaintiff on twenty-nine counts of criminal possession of a forged instrument in the second degree and thirteen counts of forgery in the second degree, despite the fact that the evidence procured during this investigation and administration by the Defendants

revealed that the Plaintiff had nothing whatsoever to do with forgeries or fraudulent entries of any kind on absentee ballot applications or petitions or absentee ballots themselves or any other documents, and that the extant evidence was entirely of the guilt of the other Defendants here, and others. This action was clearly done, upon information and belief, by the Defendants for the purpose of intimidating the Plaintiff into pleading guilty to at least one or more counts of the indictment, to avoid the risk of conviction on so many counts despite the complete lack of evidence.  Such conviction would render the Plaintiff the perfect scapegoat, and thus protect the Defendants and other political operatives who sided with the Defendants from prosecution, and thus protecting the very parties that Defendant McInerny originally threatened when his reaction, as stated above was to "take everyone down with [him]".  In so doing, Defendant Smith acted in conspiracy in fabricating evidence, including documentary and testimonial evidence against the Plaintiff, during the investigation and administration to further the conspiracy to scapegoat prosecute the Plaintiff, and ignoring and refusing to investigate and use, evidence of guilt of the other Defendants, and others.

25.     The extant evidence procured by Defendants, including and especially Defendant Smith, during the course of the investigation and administration of this voter fraud case, showed that the Plaintiff had no communications with anyone relative to forgeries or false information on the petitions, absentee ballot applications, absentee ballots, or any other documents.  In fact, the evidence procured during this investigation and administration showed that there was not one witness who could testify as to Plaintiff's involvement in any way in forgeries or false information as described above, based upon the evidence obtained during the investigation and administration of this case.  Instead, the extant evidence obtained during this investigation and

administration of this case shows that other parties, including Defendants McInerney, J. Brown

and D. Brown, among others, were involved extensively in procuring fraudulent signatures on

petitions and absentee ballot applications for the election of 2009, and in fact, had engaged in the

same activities through the elections of 2007 and 2008.

26.     All of this evidence was obtained by Defendant Smith during the course of the

investigation and administration of this voter fraud case and not utilized during the subsequent

prosecution of the Plaintiff because Defendant Smith deliberately attempted to prosecute the

Plaintiff based upon no evidence obtained during the investigation and administration and a

plethora of evidence obtained against other Democratic operatives, including Defendants

McInerny, J. Brown and D. Brown, during that investigation and administration for the sole

purpose of using the Plaintiff as a scapegoat as part of their conspiracy to hide liability of the

Democratic operatives, including Defendants McInerney, J. Brown and D. Brown.  As a result,

the guiltiest parties, Defendants McInerney, J. Brown and D. Brown, were not prosecuted until

charged by the New York State Police at the end portion of the investigation and administration.

This subsequently uncovered evidenced by the New York State Police , at the later end of this

voter fraud investigation and administration, was accomplished, upon information and belief,

without the knowledge of the Defendants in this case, who, upon information and belief, would

have done all they could during their conspiracy against the Plaintiff, to quash such evidence

against the other Defendants so Plaintiff could be their scapegoat in this case.

27.     The investigating officers behind the prosecution working, upon information and

belief, at the behest of Defendant Smith, conducted the investigation and uncovered evidence of

the guilt of Defendants, McInerny, J. Brown and D. Brown, in many counts of forgery and fraud

as to absentee ballots, yet failed to, refused and declined prosecution of same, including

Defendant Smith.  These investigating officers were at the time working for, in the course of

their employment with, and at the behest and consort of Defendant County, and yet, in direct

violation of existing policies and directives of the said Defendant County.

28.     These activities of commission and omission during the investigation and

administration of this voter fraud case leading to prosecution and trials of the Plaintiff were part

of a custom and practice of the Defendant County which has been a long and pervasive one, and

separately, also as a result of the failure of the Defendant County to adequately supervise, screen

and discipline the Defendants herein, including the Defendants McNally and Smith, in this case,

thus constituting a valid *Monell* claim under Title 42, U.S. Code, §1983, for which the Defendant

County is liable for the damages of the Plaintiff.

29.     Said Defendant Ogden, again in concert with and at the behest of Defendant,

Smith, the assigned Special Prosecutor, uncovered no evidence of the guilt of the plaintiff in any

forgery or fraud as to absentee voting applications and ballots, or anything else except clearly

phony, baseless and contrived handwriting conclusions, based upon the evidence procured during

the investigation and administration of this case.  Yet, Defendant Ogden fraudulently, falsely and

maliciously procured an obviously false and defective handwriting expert and uncovered and

prepared and provided t the prosecution false witness testimony statements to try to pin guilt on

the Plaintiff.

30.     In the course of the investigation and administration of this case, which was lead

by Defendant Smith, Defendant Smith deliberately, intentionally and maliciously utilized and

adduced completely false evidence to build the case which he eventually used to prosecute the

Plaintiff.  Specifically, Defendants Smith and Ogden procured affidavits from witnesses who never signed nor read the affidavits.  The affidavits, during the course of this investigation and administration, were forged, and falsely created by Defendants Smith and Ogden for the sole purpose of prosecuting the Plaintiff to cover up the obvious guilt of Democratic operatives, including Defendants McInerney, J. Brown and D. Brown.

31.     In the course of the investigation and administration, Defendant Smith learned that there was a great deal of evidence against Defendants McInerney, J. Brown and D. Brown, and other Democratic operatives, including multiple statements from witnesses who specifically gave evidence during this investigation and administration that Defendants McInerney, J. Brown and D. Brown and others, filled out absentee ballot applications themselves and falsely represented that the applications were filled out by the actual absentee voters, and signed absentee applications themselves, purporting and claiming falsely that they were signed by the absentee voters.  Additionally, upon information and belief, during the course of this investigation and administration, Defendant Smith learned that there was no evidence whatsoever of Plaintiff's involvement in these activities, but a case was created against him without any evidence, to scapegoat the Plaintiff and thus protect the Defendants and others from prosecution.

32.     In essence, Defendant Smith falsified evidence, created false evidence, forged signatures, created affidavits which were never read nor signed by the witnesses, and coerced perjured testimony from a number of witnesses by misrepresenting facts and the law to them, all during the course of the investigation and administration, all done for the purpose of subsequently using this false and forged evidence against the Plaintiff, and protecting the Defendants and others from prosecution.

12

33.     In addition, Defendant Smith, upon information and belief, conducted false wiretaps, subpoenaed bank records without authority, failed and refused to obtain phone records detailing the guilt of the Defendant McInerny and others, and utilized and worked with and in consort with the other Defendants to create false evidence against the Plaintiff including false handwriting evidence, false statements from witnesses, and creation of a case which eventually lead to prosecution of the Plaintiff without any evidence.

34.     In addition to the above, Defendant Smith and others deliberately, intentionally and maliciously gave false statements and information to the press in order to coerce the Plaintiff into accepting a plea of guilty and to paint the Plaintiff in as bad a light as possible to the community of Troy which would affect his ability to successfully proceed in defense of himself in the City of Troy.

35.     Additionally, in support of this conspiracy and during the course of this investigation and administration of this case, Defendant Smith, upon information and belief, conspired with the other Defendants once the New York State Police had uncovered overwhelming evidence on their own of the guilt of Defendant McInerney of this forged, false and fraudulent absentee ballot applications and absentee ballots throughout the 2009 election and turn this overwhelming evidence over to the Defendant County.  Defendant McInerney in consulting with Defendant McNally, who met and consulted with Defendant McInerny about this case despite the fact that he had already recused himself in actions which occurred during the investigation and administration of this case by Defendant McNally, were a clear violation of his role as recused prosecutor and clear illegal and fraudulent actions taken to scapegoat prosecute the Plaintiff in the prosecution that emanated and resulted from the investigation and

13

administration of this voter fraud case.

36.     The facts set forth above lay out, establish and allege actions and omissions of the Defendants, especially Defendant Smith, constituting the fabrication of false evidence against the Plaintiff during the investigation and throughout the trials in an investigatory capacity in violation of the Plaintiff's rights to due process, fair trial and equal protection (in a class of one or two).  These actions and omissions of the Defendants, especially Defendant Smith, frustrated and denied Plaintiff the right to present a defense, constituted a conspiracy to make him a scapegoat prosecution target to cover up and prevent the prosecution of the actual liable parties, Defendants and others, and malicious prosecution based on the assertion that Defendant Smith's appointment was unlawful and therefore he had no immunity from any cause of action whatsoever.

37.     Upon information and belief, Defendant McNally referred Defendant McInerny to James Long, Esq. during the course of Defendant McInerny's consultation with Defendant McNally, despite the fact that McNally had already recused himself as the prosecutor, another illegal, false and fraudulent action taken by Defendant McNally during the course of this investigation and administration.

38.     Furthermore, all of the above actions of the Defendants McNally and Smith were illegal, false and fraudulent and occurred during the investigation and administration of this voter fraud case, and were part of a long standing policy of action and omission of the Defendant County, as both Defendants McNally and Defendant Smith were policy makers of the Defendant County, who is vicariously and directly liable.

39.     During the course of this investigation and administration, Defendant Ogden,

14

acting in an *ultra vires* manner, which was false, fraudulent and malicious, procured false, coerced, forged and fictitious evidence to Defendant Smith, as the assigned Special Prosecutor, working for the Defendant County who is also vicariously and directly liable for his actions, for the purpose of accumulating such evidence during the course of this investigation and administration but used in the eventual prosecution of the Plaintiff also as part of the conspiracy scapegoat to prosecute the Plaintiff for the illegal and obvious guilty actions of the Defendants and others of forgery of absentee voter ballot applications and absentee voter ballots in the 2009 election.

40.     The strategy of this conspiracy failed however.  The Plaintiff, knowing he was completely innocent, rejected the false, fraudulent and coerced evidence procured during the investigation and administration of this case, refused to plead to anything and went to trial, not once, but twice, on evidence that was procured during the investigation and administration that was completely nonexistent.  The Defendants totally ignored the fact that their investigation and administration of this voter fraud case yielded no evidence whatsoever, no witnesses and no documentary evidence against the Plaintiff, but proceeded to prosecution.

41.     After two separate trials based on the above-described false, fictitious and coerced evidence obtained against the Plaintiff, and after years of defamation through false and fraudulent statements made by the Defendants to the press, threats, strong-arming and other illicit activities aimed at the Plaintiff, Plaintiff was entirely vindicated and found not guilty on July 16, 2012.

42.     During the second trial, evidence came out that a witness, Martiniano, had been approached by Defendants McNally and Smith, in a completely illegal manner, and despite Defendant McNally's recusal.  This occurred during the investigation and administration of this

15

case and involved illegal, false, fraudulent and criminal behavior of Defendant McNally and

Smith.  It was also a direct breach of applicable ethics and evidence of the participation and

involvement of Defendant McNally and Smith in this conspiracy to falsely scapegoat prosecute

the Plaintiff.

43.     Also, during the second trial, it became known through the testimony of

Defendant McInerny that he and Defendant J. Brown were offered a plea bargain during the

investigation and administration of this case by Defendant Smith, who went to the trouble of

having his authority as Special Prosecutor extended to Defendant McInerny after he was charged

on evidence obtained by the New York State Police and turned over to Defendant Smith during

his investigation and administration of the case.  This was done so Defendant Smith could soft

peddle anything that Defendant McInerny faced and protected from prosecution, but instead used

the false evidence obtained during the fraudulent investigation and administration to point the

false finger of liability at the Plaintiff during his subsequent prosecution.  The offer made to

Defendants McInerny and J. Brown was one felony count with no or little jail time despite the

fact that they were guilty and conceded to hundreds of such counts and were the prime instigators

of this false and fraudulent behavior.  This evidence came out during the investigation and was

covered up by Defendant Smith.  It was also a part of an unofficial policy allowed to exist, and

not protected or instructed against, by the Defendant County, who had employed Defendant

Smith as Special Prosecutor and who knew or should have known of his false, fraudulent and

illegal behavior in creating fictitious and false evidence against the Plaintiff and in covering up

clear evidence of guilt against the Defendants, McInerny, J. Brown and D. Brown.

44.     Subsequently, at trial, Defendant McInerney admitted to guilt for forgeries during

16

the 2009 Working Families Party primary on absentee ballots and absentee ballot applications. In essence, Defendant McInerny was in the middle of the prosecution of the Plaintiff at trial and was admitting to liability and performance of the criminal acts which were the very same criminal acts which the Plaintiff was charged with.  It is mind boggling that at this point, the prosecution didn't cease prosecution of the Plaintiff knowing that they had just heard a different person, Defendant McInerney, admit under oath to the guilt of the very crimes that they were trying to prosecute the Plaintiff for.  This trial activities were nothing more than a continuation of the illegal, false, fraudulent and malicious activities in the investigation and administration of this case by the Defendants.

45.     Plaintiff was found not guilty as he had no involvement in this false, fraudulent and forgery behavior and both Defendants Brown and McInerney were sentenced.  Defendant McInerney received 90 days community service and 5 years probation despite acknowledging criminal involvement for decades in hundreds of felonies; and, Defendant Brown received a split sentence of 6 months, 5 years probation despite his like involvement in nearly as many felonies over the years, and especially in the 2009 campaign.

46.     Subsequently, Defendant Brown appealed his sentence to the Appellate Division, Third Department despite the fact that he had executed a waiver of appeal in front of Acting Rensselaer County Court Judge George Pulver.  Ironically, at the Appellate Division Third Department argument on the appeal, Defendant Smith who was defending against the appeal, never even brought up the waiver of appeal which had been executed by the Defendants, although he was asked by the appellate judges during oral argument why he had not.  The appeal was denied as meritless.  Smith did nothing whatsoever to win that appeal.

## AS AND FOR A FIRST CAUSE OF ACTION

47.     The cause of action by the Plaintiff against the Defendants is that the Plaintiff was deprived of his civil rights through a conspiracy at inception of investigation and administration and throughout leading to subsequent prosecution to frame and scapegoat prosecute the innocent Plaintiff in lieu of the guilty Democrat operatives, including Defendants McInerny, J. Brown and D. Brown through fabrication of evidence against Plaintiff and suppression of valid evidence against the said Democratic operatives and Defendants in order to protect the guilty Democratic operatives and Defendants and the Democratic Political Party.

48.     Defendants negligently, carelessly and recklessly failed to properly, appropriately and sufficiently examine and investigate the facts throughout the investigation and administration of this case which they alleged to have supported an indictment and prosecution through jury trial of the Plaintiff for criminal possession of a forged instrument in the second degree.

49.     The specific conspiratorial acts occurring during the investigation and administration of this case and throughout the subsequent prosecution which proved the unlawful agreement and conspiracy and subjectives, are, upon information and belief, as follows:

         a)     Defendant McNally meets with Defendant McInerny and gives him advice;

         b)     Defendant McNally meets with Defendant Smith and discusses the case;

         c)     Defendant McNally takes custody of evidence and gets DNA reports;

         d)     Defendant McNally tells Martiniano not to give State Police his evidence by threatening him and telling him that the Democratic operatives including Defendants McInerny, J. Brown and D. Brown would not be prosecuted and that all guilt and liability would fall on the Plaintiff;

18

e)      Defendant McNally gave advice to Defendant McInerny after he was recused;

f)      Defendants McNally and Smith asked the Defendant County not to oppose the recusal appointment of Defendant Smith although it was clearly illegal;

g)      Defendant McNally makes public statements supporting Defendant Smith and adverse to Plaintiff;

h)      Defendant Smith concedes, when pressed, that Defendant McNally put pressure on him;

i)      Defendant Smith told Defendants McInerny, J. Brown and D. Brown that they would not be prosecuted despite overwhelming evidence against them; and,

j)      Defendant Smith was unable to procure any evidence against the Plaintiff, but proceeded to create a fictitious case leading to eventual prosecution of the Plaintiff.

50.    The actions set forth above are clear statements of fact as to what occurred illegally during the course of the investigation and administration of this case and were violations of the policy of the Defendant County, and the law, for which the Defendant County is vicariously and directly liable, and that they knew or should have known of same.

51.    Plaintiff did not consent to the arrest, indictment and jury trial brought against him by the Defendants.

52.    The actions and omissions of the Defendants described herein constitute a reckless and negligent investigation of the voter fraud case by refusing to utilize and in fact covering up overwhelming evidence of guilt of Democratic operatives, including Defendants McInerny, J. Brown and D. Brown, and fabricating and creating false, fictitious and coerced evidence by false witness testimony never actually given by witnesses and false documentary evidence against the Plaintiff during the course of the investigation and administration leading up to their eventual use of prosecution of the Plaintiff.

19

53.     Defendants violated Plaintiff's rights while acting under color of the law of the State of New York.

54.     Pursuant to 42 U.S.C. §1983, Defendants are jointly and severally liable to Plaintiff for damages in the sum of $5,000,000, including loss of business, loss of reputation, loss of enjoyment of life, compensatory and other damages.

55.     Plaintiff is entitled to the reasonable attorneys' fees, costs, disbursements and expert witness fees incurred in the prosecution of this action.

## AS AND FOR A SECOND CAUSE OF ACTION

56.     Plaintiff repeats and reiterates each of the allegations in each of the foregoing paragraphs of the complaint.

57.     The cause of action by the Plaintiff against the Defendants is that the Plaintiff was maliciously and intentionally deprived of his civil and constitutional rights through the reckless and negligent investigation and wrongful framing and prosecution of him in order to cover up the obvious guilt based on evidence procured during the investigation and administration of this voter fraud case of the Defendants.

58.     Defendants maliciously, intentionally and willfully failed to properly, appropriately and sufficiently examine the evidence and investigate the facts which they alleged to have supported an indictment and prosecution through jury trial of the Plaintiff for criminal possession of a forged instrument in the second degree, although they knew that sufficient evidence was lacking against him.

59.     Plaintiff did not consent to the arrest, indictment and jury trial brought against him by the Defendants.

60.    Defendants violated Plaintiff's rights while acting under color of the law of the State of New York.

61.    Pursuant to 42 U.S.C. §1983, Defendants are jointly and severally liable to Plaintiff for damages in the sum of $5,000,000, including loss of business, loss of reputation, loss of enjoyment of life, compensatory and other damages.

62.    Plaintiff is entitled to the reasonable attorneys' fees, costs, disbursements and expert witness fees incurred in the prosecution of this action.

## AS AND FOR A THIRD CAUSE OF ACTION

63.    Plaintiff repeats and reiterates each of the allegations in each of the foregoing paragraphs of the complaint.

64.    The actions and omissions of the Defendants as described above were conducted for the intentional purpose of covering up the criminal liability of the liable parties as set forth above which include Defendants McInerny, J. Brown, and McNally despite the fact that there existed overwhelming evidence against them.  The Defendants prosecuted the Plaintiff maliciously, negligently and wrongfully solely as an intentional malicious and willful cover up as described above.

65.    The actions and omissions of the Defendants described herein constitute malicious prosecution and an abuse of process in violation of federal law for which Defendants have no immunity due to the unlawful disqualification appointment of Defendant Smith by Defendant McNally and acts beyond the scope of authority of Defendants Smith and Ogden during the course of the investigation and administration of this voter fraud case by procuring false, fraudulent, coerced and fictitious evidence against the Plaintiff and covering up and

21

refusing to investigate and procure evidence against Defendants McInerny, J. Brown and D.

Brown and other Democratic operatives.

66.     Plaintiff did not consent to the arrest, indictment and jury trial brought against him

by the Defendants.

67.     Defendants violated Plaintiff's rights while acting under color of the law of the

State of New York.

68.     Pursuant to 42 U.S.C. §1983, Defendants are jointly and severally liable to

Plaintiff for damages in the sum of $5,000,000, including loss of business, loss of reputation, loss

of enjoyment of life, compensatory and other damages.

69.     Plaintiff is entitled to the reasonable attorneys' fees, costs, disbursements and

expert witness fees incurred in the prosecution of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**

70.     Plaintiff repeats and reiterates each of the allegations in each of the foregoing

paragraphs of the complaint.

71.     Throughout the conduct of the prosecution referenced above against the Plaintiff,

the County of Rensselaer and its political operatives went out of their way to defame the name

and reputation of the Plaintiff.  They went on websites and the internet with constant references,

publicity of and condemnation of the Plaintiff, all the while knowing that he was innocent, and

the others, including Defendant McInerney, were guilty.  They also went on television, made him

go through a "perp walk" and be photographed for the late night news and television with hands

shackled by handcuffs although he had turned himself in for processing.

72.     The defendants conducted a bemirsching campaign not only designed to ruin the

Plaintiff's reputation, but also to compel him under all of the bad publicity to plea to one of the counts and save Defendant McInerney and the other defendants from prosecution they so richly deserved.

73.    As a result of the intentional defamation of the Plaintiff by the Defendants, the Plaintiff was caused to have his reputation in the community destroyed and permanently harmed.

74.    In effect, the Plaintiff's reputation was completely destroyed.  He suffered great personal and psychological loss and damage.  His business, a very successful restaurant in Troy, lost hundreds of thousands of dollars in profits, and is currently under great risk of failing.  As a result of the foregoing, the Plaintiff suffered loss of reputation, psychological and emotional harm and damage, loss of business, lost wages, loss of enjoyment of life, and pain and suffering.

75.    Plaintiff did not consent to the arrest, indictment and jury trial brought against him by the Defendants.

76.    Defendants violated Plaintiff's rights while acting under color of the law of the State of New York.

77.    Pursuant to 42 U.S.C. §1983, Defendants are jointly and severally liable to Plaintiff for damages in the sum of $5,000,000, including loss of business, loss of reputation, loss of enjoyment of life, compensatory and other damages.

78.    Plaintiff is entitled to the reasonable attorneys' fees, costs, disbursements and expert witness fees incurred in the prosecution of this action.

### AS AND FOR A FIFTH CAUSE OF ACTION

79.    Plaintiff repeats and reiterates each of the allegations in each of the foregoing paragraphs of the complaint.

80.     The actions and omissions of the Defendants described herein constitute a

violation of the federal obstruction of justice statute (Title 18 U.S.C. Section 1510) for

intentionally obstructing a criminal investigation to scapegoat prosecute the Plaintiff and to cover

up the criminal activities of the Defendants, and others, in violation of federal law and

constituted acts that were beyond the unlawful disqualification appointment of Defendant Smith

and alleged acts that were not crimes as a matter of law against Plaintiff.  The allegations were

created during the investigation and administration of this case by the Defendants but were used

and leading to eventual prosecution of the Plaintiff.

81.     Pursuant to 42 U.S.C. §1983, Defendants are jointly and severally liable to

Plaintiff for damages in the sum of $5,000,000, including loss of business, loss of reputation, loss

of enjoyment of life, compensatory and other damages.

82.     Plaintiff is entitled to the reasonable attorneys' fees, costs, disbursements and

expert witness fees incurred in the prosecution of this action.

### AS AND FOR A SIXTH CAUSE OF ACTION

83.     Plaintiff repeats and reiterates each of the allegations in each of the foregoing

paragraphs of the complaint.

84.     The actions and omissions of the Defendants described herein constitute valid

Monell claims against the Defendants in that during the course of and before the investigation

and administration of this case, an illegal recusal was effectuated by and between Defendants

McNally and Smith which was not in writing, and totally unsupported by fact or law, and

performed to further the conspiracy and scapegoat prosecution of the Plaintiff in this case, and as

a result, a conspiracy was developed between Defendants McNally and Smith at inception and

24

throughout to frame and scapegoat prosecute the Plaintiff for alleged crimes he did not commit, protect other Defendants and others from prosecution by hiding and ignoring their overwhelming evidence of guilt, and thus, to frame and scapegoat prosecute others for crimes that they did not commit solely to protect Democratic operatives, including Defendants McInerny, J. Brown and D. Brown to shield their liability for voter fraud in 2009 and past elections from prosecution, conviction and punishment and thus allowing and promoting a long standing scheme to defraud voters and to protect the Rensselaer County Democratic Party as candidates from adverse political effect, despite the fact that Defendant Smith had or should have had ample evidence of guilt of Democratic operatives, including Defendants McInerny, J. Brown and D. Brown through voter fraud in the election year 2007, 2008 and 2009 in Troy, New York.

85.     This above and within described *Monell* claims are based upon the actions of Defendants McNally and Smith as representatives, employees and policymakers of the Defendant County, in the actions described and set forth in detail herein.  Additionally, the actions of the Defendant County, including not taking action to disqualify Defendant Smith after being given notice and knowledge of the unlawful disqualification of the Defendant McNally and the appointment of Defendant Smith serve as a factual predict and basis for this *Monell* claim, amounted to establishing, promoting and allowing a long standing unofficial policy of malfeasance by the Defendant County officials in, among other things, failing to discover, uncover, prevent, instruct and regulate against it, all as alleged above.

86.     Pursuant to 42 U.S.C. § 1983, Defendants are jointly and severally liable to Plaintiff for damages in the sum of $5,000,000, including loss of business, loss of reputation, loss of enjoyment of life, compensatory and other damages.

25

87.     Plaintiff is entitled to the reasonable attorneys' fees, costs, disbursements and expert witness fees incurred in the prosecution of this action.

**AS AND FOR A SEVENTH CAUSE OF ACTION**

88.     Plaintiff repeats and reiterates each of the allegations in each of the foregoing paragraphs of the complaint.

89.     The actions and omissions of the Defendants during the course of the investigation and administration of this voter fraud case and use in the subsequent prosecution of the Plaintiff constituted RICO racketeering activity in that it involved voter fraud, document forgery through 2007, 2008 and 2009 in voter elections in the City of Troy involving Defendants McInerny, J. Brown and D. Brown and other Democratic operatives.

90.     This RICO cause of action is based upon the pattern of racketeering activity conducted by the Defendants described in the actions and omissions of the Defendants as set forth above against the Plaintiff for the purpose of establishing a conspiracy enterprise to scapegoat prosecute the Plaintiff and protect the Defendants, among others, from prosecution.  It was a pattern of activity that was open-ended throughout the investigation and administration of this voter fraud case.  It constituted injury to property of the Plaintiff, including the loss of his business and reputation.  It also constituted predicate acts which include criminal investigation lending to prosecution of Plaintiff's federal and civil rights, obstruction of justice, including quashing federal and state prosecution of guilty Defendants, fabrication of false testimony, misleading the New York State Police and other bodies and parties during the course of the investigation and administration of this voter fraud case, obstructing the FBI investigation and federal prosecution, fabricating and presenting false evidence and judicial proceedings against

the Plaintiff, committing actions and omissions which constituted mail fraud, wire fraud, judiciary law violations of aiding the Defendants to avoid prosecution and scapegoat the Plaintiff, scapegoat prosecute the Plaintiff, and allowing, not prevent and instructing against judicial law violations of knowingly presenting false evidence, and miscellaneous criminal actions in furtherance of this racketeering activity and conspiracy.

91.     The actions and omissions of the Defendants in this RICO conspiracy involved predicate acts involving federal obstruction of justice, violation of federal civil rights statutes, mail and wire fraud, and state and judiciary law violations.

92.     The RICO conspiracy cause of action amounted to a negative effect on interstate commerce through the use of mail and involving federal elections.

93.     Pursuant to 42 U.S.C. § 1983, Defendants are jointly and severally liable to Plaintiff for damages in the sum of $5,000,000, including loss of business, loss of reputation, loss of enjoyment of life, compensatory and other damages.

94.     Plaintiff is entitled to the reasonable attorneys' fees, costs, disbursements and expert witness fees incurred in the prosecution of this action.

### AS AND FOR A EIGHTH CAUSE OF ACTION

95.     Plaintiff repeats and reiterates each of the allegations in each of the foregoing paragraphs of the complaint.

96.     Through a pattern of racketeering involving covering up voter fraud and document forgery by the Defendants McInerny, J. Brown and D. Brown and other Democratic operatives and creating false, fraudulent and fictitious evidence through false witness and false documentary evidence against the Plaintiff which did not exist solely to scapegoat prosecute the Plaintiff to

27

cover up the guilt of the above described Democratic operatives.

97.     The actions and omissions of the Defendants in this RICO conspiracy involved predicate acts involving federal obstruction of justice, violation of federal civil rights statutes, mail and wire fraud, and state and judiciary law violations.

98.     The RICO conspiracy cause of action amounted to a negative effect on interstate commerce through the use of mail and involving federal elections.

99.     Pursuant to 42 U.S.C. § 1983, Defendants are jointly and severally liable to Plaintiff for damages in the sum of $5,000,000, including loss of business, loss of reputation, loss of enjoyment of life, compensatory and other damages.

100.    Plaintiff is entitled to the reasonable attorneys' fees, costs, disbursements and expert witness fees incurred in the prosecution of this action.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      On the First Cause of Action, for compensatory damages against all Defendants, jointly and severally, in the amount of $5,000,000;

B.      On the First Cause of Action, for punitive damages against all Defendants, jointly and severally, in the amount of $5,000,000;

C.      On the Second Cause of Action, for compensatory damages against all Defendants, jointly and severally, in the amount of $5,000,000;

D.      On the Second Cause of Action, for punitive damages against all Defendants, jointly and severally, in the amount of $5,000,000;

E.      On the Third Cause of Action, for compensatory damages against all Defendants, jointly and severally, in the amount of $5,000,000;

F.      On the Third Cause of Action, for punitive damages against all Defendants, jointly and severally, in the amount of $5,000,000;

G.      On the Fourth Cause of Action, for compensatory damages against all Defendants,

jointly and severally, in the amount of $5,000,000;

H.      On the Fourth Cause of Action, for punitive damages against all Defendants, jointly and severally, in the amount of $5,000,000;

I.      On the Fifth Cause of Action, for compensatory damages against all Defendants, jointly and severally, in the amount of $5,000,000;

J.      On the Fifth Cause of Action, for punitive damages against all Defendants, jointly and severally, in the amount of $5,000,000;

K.      On the Sixth Cause of Action, for compensatory damages against all Defendants, jointly and severally, in the amount of $5,000,000;

L.      On the Sixth Cause of Action, for punitive damages against all Defendants, jointly and severally, in the amount of $5,000,000;

M.      On the Seventh Cause of Action, for compensatory damages against all Defendants, jointly and severally, in the amount of $5,000,000;

N.      On the Seventh Cause of Action, for punitive damages against all Defendants, jointly and severally, in the amount of $5,000,000;

O.      On the Eighth Cause of Action, for compensatory damages against all Defendants, jointly and severally, in the amount of $5,000,000;

P.      On the Eighth Cause of Action, for punitive damages against all Defendants, jointly and severally, in the amount of $5,000,000;

Q.      For the costs, disbursements, attorneys' fees and expert witness fees incurred in the prosecution of this action.


Dated:          July 15, 2015

                                        _/S/ Paul F. Dwyer_____
                                        Paul F. Dwyer, Esq.
                                        Bar Roll #101562
                                        Attorney for Plaintiff
                                        399 Albany Shaker Road, Suite 204
                                        Loudonville, NY 12211
                                        Email: pdwyer@lawdd.com
                                        Telephone:     (518) 432-5988
                                        Facsimile:     (518) 432-5980