UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL LoPORTO,

                            Plaintiff,

   -against-                                    1:15-CV-0866 (LEK/DJS)

COUNTY OF RENSSELAER, *et al.*,

                            Defendants.

## **DECISION AND ORDER**

**I.    INTRODUCTION**

Before the Court is an attorney conflict issue, raised sua sponte in the Court's order dated August 15, 2016. Dkt. No. 76 ("August Order"). The conflict at issue comes from the relationship between Paul F. Dwyer—counsel for Plaintiff Michael LoPorto—and Phillip G. Steck, a partner with the law firm of Cooper Erving & Savage LLP and counsel for defendants John and Daniel Brown. Id. at 1. For the reasons stated below, Dwyer, Steck, and Cooper Erving are all disqualified from this case.

**II.    BACKGROUND**

The present conflict issue came before the Court after several motions to dismiss and a related motion for sanctions were filed in this case. Dkt. Nos. 23, 24, 29, 40, 57, 58, 66 (collectively, the "Motions"). In the course of its consideration of the Motions, the Court was informed of the possibility of a partial settlement or dismissal of the Browns from this case, and conducted a conference to determine the impact of the proposed stipulated dismissal on the Motions. Aug. Order at 1; Dkt. No. 74 ("Minute Entry").

At the conference, which was held on August 12, 2016, it was revealed that Dwyer—attorney for LoPorto (the plaintiff)—had joined Cooper Erving as "of counsel" during the course of this litigation. Minute Entry; Aug. Order at 1. While joining a law firm would not itself be an issue, the conflict here is that Cooper Erving, and specifically Steck (one of its partners), already represented the Browns, two defendants in this action. Minute Entry; Aug. Order at 1–2. Compounding the appearance of impropriety is the fact that the Browns are the only two defendants whom Dwyer sought to dismiss from this case. Aug. Order at 1–2.

Noting the apparent conflict, the Court ordered Dwyer and Steck to submit memoranda or affidavits showing why either or both of them should not be disqualified from this case, and also permitted all other parties to respond concerning the disqualification issue and the impact of any disqualification on the Motions. Id. at 3. Both Dwyer and Steck filed affidavits, Dkt. Nos. 78 ("Dwyer Affidavit"), 79 ("Steck Affidavit"), and counsel for the County of Rensselaer filed an affidavit in response, Dkt. No. 80 ("Bailey Affidavit").

In his affidavit, Dwyer admits to having joined Cooper Erving as "of counsel" on July 5, 2016, and notes that Steck remains a partner there. Dwyer Aff. ¶ 4. Despite this affiliation, Dwyer argues that no conflict was created in regard to this case. According to Dwyer, this is because the claims brought against the Browns truly are baseless, and were specifically "included . . . in this lawsuit [by Dwyer] at the request of the plaintiff," despite "the apparent dearth of factual support for the claim against these two particular defendants." Id. ¶ 5; cf. Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary

2

support . . . ."). Dwyer further supports this view of the conflict by noting that the proposed release of the Browns was accomplished "by negotiating th[e] discontinuance in exchange for withdrawal of [the] Browns' motion to dismiss and motion for sanctions, with their counsel, Attorney Philip Steck," a process that "occurred months before there was any agreement, creation, or establishment" of Dwyer's relationship with Cooper Erving. Dwyer Aff. ¶¶ 7–8. Finally, Dwyer adds that he alone will receive any lawsuit proceeds (presumably as a contingent fee), and no proceeds will go to either Steck or Cooper Erving. Id. ¶ 9.

Steck's affidavit does not so much address his continued participation in the case as it does the reasons why the Browns should still be dismissed as defendants. Steck notes that "[a]t the time the Browns moved to dismiss and for sanctions in this matter, there were no discussions between our firm and [Dwyer] concerning the prospect of [him] becoming associated with our firm." Steck Aff. ¶ 3. As evidence of the arms-length nature of his motion practice and subsequent agreement regarding the Browns' dismissal, Steck notes that he would "not have made [a motion for sanctions] against an attorney with whom our firm even contemplated a relationship." Id. ¶ 4. Steck concludes by noting that "[t]he Browns are willing to retain substitute counsel should the case not be dismissed against them." Id. ¶ 8.

In the County of Rensselaer's response, John W. Bailey—attorney for the County—notes the temporal proximity of the stipulated dismissal (which was circulated on June 23, 2016) and Dwyer's joining Cooper Erving, and responds to Steck's affidavit by stating that stipulated dismissal of the Browns is inappropriate when they may be apportioned liability at trial or when the County may assert crossclaims against them. Bailey Aff. ¶¶ 7–10. Bailey concludes by arguing that even if the Browns are dismissed from the case or obtain new counsel, Dwyer

3

should still be disqualified due to the conflict caused by him joining Cooper Erving. Id. ¶¶ 11–13.

### III. DISCUSSION

Lawyers associated with the same firm cannot represent both sides of a single case. N.Y. R. Prof'l Conduct rr. 1.7(a)(1), 1.10(a); accord Model Rules of Prof'l Conduct rr. 1.7(a)(1), 1.10(a) (Am. Bar Ass'n 1983); see also N.Y. R. Prof'l Conduct r. 1.7(b)(3) (noting that a lawyer may never represent a client if the representation involves "the assertion of a claim by one client against another client represented by the lawyer [or her law firm] in the same litigation or other proceeding before a tribunal"). A conflict of this type cannot be waived. N.Y. R. Prof. Conduct r. 1.7(b). Even beyond the most basic formulation of this rule (which is the one at issue in this case), the prohibition against one lawyer or firm representing competing interests has been expanded to other circumstances as well, and can have a lasting effect on a firm's ability to take on a subsequent representation of a competing party. See, e.g., id. rr. 1.9, 1.10(b) (discussing restrictions stemming from duties to former clients); Kassis v. Teacher's Ins. & Annuity Ass'n, 717 N.E.2d 674, 676 (N.Y. 1999) ("[It is a] well-established rule that a lawyer may not represent a client in a matter and thereafter represent another client with interests materially adverse to interests of the former client in the same or a substantially related matter.").

Because of the obviousness of the conflict when the same firm takes on both sides of a case, and because of the clarity of the rule in question, there are few cases interpreting or applying this aspect of the rule. As a matter of comparison, however, in In re Kaufman, No. 355054/H, 2013 WL 4605989, at *2–3 (N.Y. Sup. Ct. Aug. 28, 2013), the court found that disqualification was required when a party was represented by the same firm that had met with an

4

opposing party for a consultation that did not result in a retention of the firm. The litany of cases discussing imputed conflicts in the case of an adverse *former* client further demonstrates this point. E.g., AVRA Surgical, Inc. v. Dualis MedTech GmbH, No. 13-CV-7863, 2014 WL 2198598, at *2–4 (S.D.N.Y. May 27, 2014); Kassis, 717 N.E.2d at 676–79; Cardinale v. Golinello, 372 N.E.2d 26, 29–31 (N.Y. 1977). By contrast, the proposal that a single firm could continue to have attorneys appearing on opposing sides in the same case is simply untenable.

In this case, disqualification is clearly required. Attorneys affiliated with the same law firm are representing both the plaintiff and defendants in the same proceeding, a violation of both the Rules of Professional Conduct and of common sense. Furthermore, it is a violation that cannot be remedied by waiver, which Cooper Erving would have needed to secure before representing the second party and after terminating their representation of the first, along with the implementation of any required screening procedures. See N.Y. R. Prof. Conduct rr. 1.9, 1.18(c)–(d). The Court also will not take sides in determining which party is more entitled to continued representation by Cooper Erving, especially when both attorneys allowed the present arrangement to continue and failed to take steps to protect the integrity of these proceedings.

"[T]he rule of imputed disqualification reinforces an attorney's ethical obligation to avoid the appearance of impropriety . . . and provides a clear and readily administered test, thereby encouraging self-enforcement among members of the legal profession." Kassis, 717 N.E.2d at 677. Even if these lawyers were somehow unaware that the same firm cannot represent clients on opposing sides of a case, the Court clearly explained this in the August Order. Aug. Order at 2. Instead of realizing their error, helping their clients secure replacement counsel, and withdrawing—or alternatively making any colorable argument as to why no conflict

5

existed[1]—both attorneys contended that they could continue as counsel for their clients in this action. See Dwyer Aff. ¶ 3 ("[T]here is no inherent conflict of interest in [Dwyer's] continuing participation in this case . . . ."); Steck Aff. ¶¶ 3–4 (arguing that the timing of the Browns' motion practice negates any appearance of impropriety). But cf. Steck Aff. ¶ 8 ("The Browns are willing to retain substitute counsel should the case not be dismissed against them . . . .").

Furthermore, the Cooper Erving firm is itself drawn into its attorneys' ethical morass. Under New York's rules, a law firm is required to "implement and maintain a system by which proposed engagements are checked against current and previous engagements when . . . the firm hires or associates with another lawyer." N.Y. R. Prof. Conduct r. 1.10(e). Failure to adequately maintain such a system is a per se violation of the rules, and where a failure to employ such a check "is a substantial factor" in causing a conflict, "the law firm, as well as the individual

---

[1] For example, in Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 133–34 (2d Cir. 2005), the court discussed how certain "of counsel" relationships might not be considered "associated" under the Rules of Professional Conduct. In that case, an attorney whose firm leased office space from a second firm became considered "of counsel" there and shared a limited number of clients, while still maintaining and operating his own firm. Id. Looking at "the substance of the relationship under review and the procedures in place," the court found that the relationship was "too attenuated and too remote from the matter in question to attribute [the attorney's] potential conflict to the firm." Id. at 135–36. However, even if the attenuated relationship found in Hempstead were seen here (for which Dwyer presented no factual support in response to the Court's August Order), the reasoning of that case is easily distinguishable. Hempstead involved representation by the "of counsel" attorney in an entirely separate matter, and itself noted that imputation would not be made because the two matters were "too remote" from each other to establish conflict. Id. at 136. In this case, the attorneys in question are representing different sides in the same adversarial proceeding, a fact pattern that implicates the "high degree of undivided loyalty" owed to clients, Kelly v. Greason, 244 N.E.2d 456, 460 (N.Y. 1968), as opposed to only the need to protect client confidences. See also Atasi Corp. v. Seagate Tech., 847 F.2d 826, 829–31 (Fed. Cir. 1988) (disqualifying law firm when of counsel attorney previously represented the opposing party in the same litigation).

lawyer, shall be responsible for the violation." Id. r. 1.10(f)–(g); see also L.R. 83.4(j) (requiring the Northern District of New York to enforce the New York Rules of Professional Conduct).

For these reasons, Dwyer, Steck, and the entire Cooper Erving law firm must be disqualified from further representation and appearance in this case. See Drywall Tapers & Pointers of Greater N.Y. v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n, No. 93-CV-154, 1996 WL 1088933, at *8 (E.D.N.Y. Oct. 24, 1996) (citing Wheat v. United States, 486 U.S. 153, 160 (1988)) (noting that "the Court has an independent interest in the integrity of the proceedings" and may accordingly issue disqualification orders sua sponte). The proceedings in this case will remain stayed for an additional forty-five (45) days so as to allow LoPorto and the Browns to secure replacement counsel.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that attorneys Paul F. Dwyer, Phillip G. Steck, and the law firm of Cooper Erving & Savage LLP are **DISQUALIFIED** from representation and appearance in this case; and it is further

**ORDERED**, that further proceedings in this case shall remain **STAYED** for **forty-five (45) days** from the date of this Decision and Order, so as to allow LoPorto and the Browns to obtain new counsel; and it is further

**ORDERED**, that, if LoPorto or the Browns believe that the papers filed by their previous counsel on the outstanding motions in this case should be replaced, they shall file within **forty-five (45) days** from the date of this Decision and Order—either through new counsel or pro se—letter motions requesting additional briefing; and it is further

7

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: November 16, 2016
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge